IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAMELA D. HERBERT,

      Plaintiff,

vs.                                            No. CIV 96-1811 JC/DJS

HIGH COUNTRY MOBILE HOMES, INC.,
and JIM MIHELICH,

      Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came before the Court for a bench trial on January 5, 6 and 8, 1998, the Honorable John E. Conway, Chief United States District Judge, presiding. The Court, having considered the witnesses and exhibits presented at trial, as well as the arguments advanced by all parties, makes the following findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a).

### Findings of Fact

1.      Plaintiff Pamela D. Herbert and Defendant Jim Mihelich are residents of the State of New Mexico. Defendant High Country Mobile Homes, Inc. ("High Country") is a corporation organized under the laws of the State of New Mexico. High Country has its principal place of business in Farmington, New Mexico. High Country is principally owned by Defendant Jim Mihelich and his wife, Gloria Mihelich. High Country is in the business of selling mobile homes, an industry that affects interstate commerce. High Country had more than 15, but less than 100 employees at all times pertinent to this lawsuit.

2.      Plaintiff went to work for High Country in January 1995 as a mobile home Sales Representative.  During her employment with High Country, Jim Mihelich was her supervisor.  There were no other individuals in Ms. Herbert's chain of command.  Mr. Mihelich was the President and Manager of High Country during Ms. Herbert's employment at High Country.

3.      Mr. Mihelich held mandatory devotional prayer meetings at 8:00 a.m. on each day of the work week.  The employees of High Country, including Ms. Herbert, were required to attend these devotionals.  During the non-denominational devotionals, Mr. Mihelich would have his employees pray for continued business success.  Ms. Herbert, a Christian, found the devotionals objectionable because of their self-serving nature.  Ms. Herbert, however, never complained about the devotionals to Mr. Mihelich.  Defendant Mihelich enjoyed telling his employees, "It's my way or the highway."  This statement sets the tenor for employment at High Country.

4.      During the course of Ms. Herbert's employment at High Country, she was subjected to numerous instances of offensive conduct by Mr. Mihelich.  On Ms. Herbert's first day of employment, Mr. Mihelich intentionally brushed up against her body and in the process rubbed up against her thigh and buttocks.  This conduct was highly offensive to Plaintiff.  On Plaintiff's second day of employment, Mr. Mihelich again intentionally brushed against Ms. Herbert--this time he intentionally touched her in the crotch area.  This was also highly offensive to Plaintiff.

In subsequent months, Ms. Herbert was touched in extremely inappropriate and offensive ways on many, many other occasions.  On one occasion, Mr. Mihelich tried to run his hand up Ms. Herbert's dress.  Ms. Herbert told Mr. Mihelich, "Jim–PLEASE STOP!"  On another occasion, Mr. Mihelich put his hand in Ms. Herbert's chest area.  Mr. Mihelich was attempting to put his hand down Ms. Herbert's blouse.  Ms. Herbert had to grab Mr. Mihelich's hand and tell him to stop.

Additionally, toward the end of Ms. Herbert's employment at High Country, Mr. Mihelich again tried to run his hand up Ms. Herbert's dress. There were also many instances where Mr. Mihelich approached Ms. Herbert intending to brush up against her, or touch her in an offensive manner, only to have Ms. Herbert pull away to avoid contact. This caused Ms. Herbert apprehension. Ms. Herbert also witnessed Mr. Mihelich touch other female sales representatives in inappropriate ways.

     5. In addition to the offensive touchings by Mr. Mihelich, Ms. Herbert endured numerous offensive comments and jokes from Mr. Mihelich. On at least one occasion, Mr. Mihelich described the sexual attributes of three of his female employees. He stated that he liked Plaintiff's legs, that he liked another salesperson's "ass," and finally, that he thought a third salesperson's breasts were best. At another point in Ms. Herbert's employment, Mr. Mihelich offered to make her a good deal on the sale of a pickup truck if she would "flash" him.

Following the High Country Christmas party, Defendant stated to Ms. Herbert, in the presence of other employees of High Country, that she had danced for him at the Christmas party, and that she had pulled up her dress and pulled down her pantyhose during the dance. Mr. Mihelich claimed he had videotaped the whole incident, when in actuality he had fabricated the entire offensive story. Mr. Mihelich also told off-color sexual jokes in Ms. Herbert's presence on a regular basis. However, the Plaintiff did not complain about these off-color sexual jokes.

     6. Ms. Herbert was not the lone recipient of Mr. Mihelich's sexually offensive conduct and jokes. Other recipients include the following employees of High Country: Ms. Misty Castro Honaker, Ms. Jean Crawford, and Ms. Rhonda Crawford Brimhall. On one occasion, Mr. Mihelich intentionally pulled Ms. Misty Castro Honaker onto his chair in his office and grabbed at her breasts and pelvic area. While Ms. Honaker was being assaulted, she was furiously trying to free herself from

the Defendant's grasp, but could not regain her footing due to a roller sheet under the Defendant's chair. Mr. Mihelich also approached Ms. Honaker on another occasion while she was cleaning an office on her hands and knees. Mr. Mihelich put his crotch area in her face and told her that was how he liked his women. Ms. Honaker informed Plaintiff of these occurrences.

Mr. Mihelich intentionally and inappropriately put his hand up Ms. Jean Crawford's dress. I further find that Mr. Mihelich tried to stick his fingers down Ms. Rhonda Crawford Brimhall's blouse on numerous occasions.[1] Mr. Mihelich also tried to run his fingers between Ms. Brimhall's legs on at least one occasion, and, on at least one other occasion--and in the presence of other High Country employees--grabbed Ms. Brimhall by the waist and pushed his body into hers. Ms. Brimhall also witnessed Mr. Mihelich touch Ms. Herbert on the legs in a sexual and inappropriate manner. Ms. Brimhall and Ms. Herbert discussed the offensive conduct they were experiencing from Mr. Mihelich.

In addition to the offensive physical touchings, Mr. Mihelich also made inappropriate remarks to his other female employees, including two separate instances where he, while presenting commission checks, asked the female employees if the checks made them "wet." Mr. Mihelich also told Ms. Honaker that he would give her furniture from the company if he could fondle her.

7. Plaintiff did not complain about Mr. Mihelich's sexually offensive conduct--other than to thwart his specific instances of offensive touching. Defendant's abusive and intimidating manner, coupled with his position over Ms. Herbert, made complaint futile--there were no established grievance procedures, and no EEOC postings. Ms. Herbert was in a terrible position--she had to endure sexual torment and abuse in order to keep her job that paid quite handsomely. Mr. Mihelich's offensive conduct was the talk of the employees at High Country.

---

[1] Rhonda Crawford Brimhall is Jean Crawford's daughter.

On January 18, 1996, for reasons unknown, Mr. Mihelich took away all the mobile home deals on which Ms. Herbert was working. Mr. Mihelich did not return the deals the following day. To Ms. Herbert this was the final straw--she had endured all she could take. Ms. Herbert quit her job in response to the continued abuse from Defendant--abuse that was primarily sexually-motivated offensive touchings, comments and jokes.

8. After leaving her job at High Country in January 1996, Ms. Herbert struggled to find equivalent employment. Ms. Herbert worked several different jobs in 1996. She cleaned houses, worked in the food and beverage industry, and sold a vacuum cleaner. In 1997, she worked for United Mobile Homes for one month, in the food and beverage industry for two months, and finally as a school bus driver.

9. Plaintiff filed a complaint with the EEOC on February 6, 1996. Ms. Herbert's complaint alleged sexual and religious based employment discrimination. The EEOC issued a right to sue letter on October 4, 1996. Plaintiff filed her Complaint in this lawsuit within 90 days of the receipt of the right to sue letter.

10. As a result of not being able to work at High Country because of Mr. Mihelich's sexually offensive conduct, Ms. Herbert lost $35,000 in earnings for 1996 and $35,000 in 1997. Ms. Herbert's earnings would have increased from 1995 because her experience and contacts would have continued to expand. Ms. Herbert will also suffer $50,000 in future lost earnings. Ms. Herbert suffered $10,000 in humiliation and embarrassment from Mr. Mihelich's numerous offensive touchings and attempted offensive touchings.

11. Mr. Mihelich was well aware of the position and power he held over his female employees. He paid them well and he offered them great sales opportunities. Mr. Mihelich also knew

his employees needed their jobs and were unlikely to complain about his sexually offensive conduct. Mr. Mihelich used his position and power to subject Plaintiff to offensive touchings, comments and jokes that were sexually motivated.

### Conclusions of Law

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff timely brought this action after complying with the procedures required under Title VII.

2. High Country was an employer subject to the dictates of Title VII during the entire course of Ms. Herbert's employment. See 42 U.S.C. § 2000e(b).

3. Although the parties stipulated that Plaintiff voluntarily terminated her employment, I do not accept that stipulation. I find that a reasonable person would have viewed the working conditions at High Country as intolerable due to Mr. Mihelich's sexually motivated offensive touchings, comments and jokes. Plaintiff quit her job primarily because of this continued sexual harassment--even though the final act may not have been sexually motivated. I thus find that Plaintiff was constructively discharged. See Derr v. Gulf Oil Corp., 796 F.2d 340, 343-44 (10th Cir. 1986); Bolden v. PRC Inc., 43 F.3d 545, 552 (10th Cir. 1994).

4. I find the work environment at High Country to have been a sexually hostile work environment. The above-mentioned sexually-motivated offensive conduct that Ms. Herbert and the other female employees at High Country experienced was pervasive and severe. Mr. Mihelich's conduct was extremely opprobrious and in clear violation of Title VII. See Bolden, 43 F.3d at 550-51.

5.      I further find that on numerous occasions Mr. Mihelich committed common law battery on Plaintiff. As previously described, Mr. Mihelich intentionally caused numerous offensive contacts with Plaintiff's person. See State v. Ortega, 113 N.M. 437, 440 (N.M. Ct. App.). I also find that Mr. Mihelich assaulted Plaintiff by intentionally reaching for and approaching her on several occasions. On those occasions, Plaintiff had a reasonable apprehension of immediate offensive contact from Mihelich. See Baca v. Velez, 114 N.M. 13, 15 (1992).

6.      At the close of Plaintiff's case, pursuant to Federal Rule of Civil Procedure 52(c), I entered a judgment as a matter of law against Plaintiff on her religious harassment claim. Plaintiff's claim failed because she never expressed her distaste for the religious devotionals to Mr. Mihelich. Additionally, no adverse employment action was taken against Ms. Herbert vis-à-vis her objection to the self-serving nature of the devotionals--Ms. Herbert's constructive discharge was not due to the religious devotionals. See Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033, 1038 (10th Cir. 1993); Young v. Southwestern Sav. and Loan Ass'n, 509 F.2d 140, 141-43 (5th Cir. 1975). The self-serving nature of the morning devotionals was also not sufficient to establish a religiously hostile work environment, **for Ms. Herbert**. The devotionals were merely offensive utterances to Ms. Herbert and they did not unreasonably interfere with her work performance. See Kanter v. Baldwin Cooke Co., No. 93 C 6239, 1995 WL 692022, at *3-4 (N.D. Ill. Nov. 20, 1995).

7.      Plaintiff is entitled to reasonable attorney fees as part of the costs pursuant to 42 U.S.C. § 2000e-5(k).

8.      Punitive damages in the amount of $50,000 are also appropriate in this case to deter future instances of sexual misconduct and to punish conduct that is reprehensible, particularly in this

day and age.  42 U.S.C. § 1981a(b)(1); <u>Sassaman v. Heart City Toyota</u>, 879 F. Supp. 901, 911 (N.D. Ind. 1994).

9. If it is determined on appeal that I have erred in computing Plaintiff's lost earnings for 1996, 1997, or future lost earnings, the amount in error is to be added to the punitive damage award I previously stated.

10. The Civil Rights Act of 1991 placed statutory caps on the total amount of recovery a Title VII claimant can recover.  This cap applies to the total compensatory and punitive damage award, and is scaled to the number of employees an employer has.  <u>See</u> 42 U.S.C. § 1981a(b)(3).  <u>See also</u> <u>Haynes v. Williams</u>, 88 F.3d 898, 901 (10th Cir. 1996).  Because High Country had more than 15, but less than 100 employees for the course of Ms. Herbert's employment, $50,000 is the statutory cap for Ms. Herbert's Title VII claim.  Since Ms. Herbert's actual damages exceed this cap ($35,000 in lost earnings for 1996; $35,000 for 1997; $50,000 in lost future earnings; and $50,000 in punitive damages), her Title VII award will be reduced to $50,000.

11. Mr. Mihelich cannot be held individually liable as a **supervisor** under Title VII. Title VII applies only to employers.  <u>See</u> <u>Haynes</u>, 88 F.3d at 901; <u>Wathen v. General Electric Co.</u>, 115 F.3d 400, 403-06 (6th Cir. 1997); <u>Coulter v. IRMCO Properties and Management Corp.</u>, No. 94 C 7480, 1996 WL 111897 at *1-2 (N.D. Ill. Mar. 12, 1996).  Consequently, the capped $50,000 awarded to Ms. Herbert for compensatory and punitive damages under Title VII will be against High Country only.  The $10,000 award for assault and battery will be against High Country and Mr. Mihelich.  Mr. Mihelich's position as president, manager and part owner of High Country make him the alter ego of the corporation.

A judgment in accordance with these findings and conclusions shall be entered contemporaneously herewith.

DATED this 27th day of January, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:    Todd M. Ackley
                          Robert Graham & Associates, P. C.
                          Farmington, New Mexico

Counsel for Defendants:   Deborah D. Wells
                          Kennedy, Moulton & Wells, P. C.
                          Albuquerque, New Mexico

                          R. Thomas Dailey
                          Farmington, New Mexico